**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, ET AL., | § § § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-02061 |
| | § | |
| 1ST CHOICE ACCIDENT & INJURY, LLC, ET AL., | § § | |
| | § | |
| *Defendants*. | § | |

---

**MOTION TO DISMISS UNDER RULE 12(b)(6)**

---

TO THE HONORABLE COURT:

Defendants 1ˢᵗ Choice Accident & Injury, LLC, Celebrity Spine & Joint, LLC, Houston Pain Relief & Wellness Clinic, LLC, Smart Choice Chiropractic, LLC, ProHealth Medical Group Management, LLC, Millennium Pain & Surgical Institute, LLC, Medical Center Chiropractic, LLC, Origin Spine Institute, LLC, Origin MRI and Diagnostic, Phuc Kien "Andy" Huynh, D.C., Phuc Vinh "Charlie" Huynh, D.C., Ali Mazloom M.D., Danielle Bui, Susan Hanh Huynh, Phuc "Nancy" Huynh, and Scott Hung, M.D., (collectively, "**Movant Defendants**") hereby file this Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) and in support would respectfully show:

## Table of Contents

I. Nature and Stage of Proceeding ................................................................. 1

II. Statement of the Issues .............................................................................. 1

III. Introduction & Summary of Argument ...................................................... 2

IV. Summary of Allegations ............................................................................ 4

V. Legal Standard .......................................................................................... 5

VI. Argument & Authorities ............................................................................ 6

   A. Farmers' allegations cannot establish a viable RICO claim. ............................. 6

      1. Farmers does not adequately allege RICO causation, and its affirmative pleadings trigger a statute of limitations defense. .................................................... 7

         a. Farmers has not adequately alleged causation. ........................................... 7

         b. Farmers pleads itself into a Statute of Limitations problem, which also highlights causation flaws. ..................................................................... 10

      2. Farmers does not adequately plead a RICO enterprise. ............................... 12

      3. Farmers' allegations are insufficient to establish liability against Movant Defendants as a "culpable person" under § 1962(c). .............................................. 14

      4. Farmers' RICO claim against Movant Defendants fails because Farmers' allegations do not adequately plead that *each* of Movant Defendants committed racketeering activity. ................................................................................... 16

         a. Moreover, Farmers' allegations of "fraud" are conclusory, contrary to common sense, and cannot support a viable RICO claim. .............................. 18

   B. Farmers has not pled a claim against Movant Defendants for money had and received for which relief can be granted. .................................................... 22

      1. First, Farmers' allegations are impermissibly conclusory. ........................... 22

      2. Second, to the extent the exhibits to the Complaint constitute well-pled allegations, the applicable statute of limitations proscribes recovery. ................... 24

VII. Conclusion .............................................................................................. 25

## I.  <u>Nature and Stage of Proceeding</u>

Plaintiffs are various Farmers insurance entities (collectively, "**Farmers**"). Movant Defendants represent only a portion of the named defendants. Farmers filed its original complaint on June 24, 2022. ECF No. 1. During a court conference held on October 18, 2022, Farmers indicated that it would amend its original complaint. ECF No. 32. Farmers filed its amended complaint (the "**Complaint**") on February 28, 2023. ECF No. 53. The Court previously gave leave to all defendants to file motions to dismiss in response to the Complaint. *See* Minute Entry dated February 15, 2023. Movant Defendants now file this Motion to Dismiss First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

## II.  <u>Statement of the Issues</u>

<u>Issue One</u>:   Farmers pled a claim under the Racketeering Influenced and Corrupt Organizations Act (RICO) §1962(c) against Movant Defendants based on alleged mail fraud. Has Farmers sufficiently pled its RICO claim against *each* individual Movant Defendants under Federal Rule of Civil Procedure 8 (general pleading standard) and Federal Rule of Civil Procedure 9 (heightened particularity standard for fraud allegations) to show a plausible entitlement to relief?

Answer: **NO**.

<u>Issue Two</u>:   Farmers also pled a claim for money had and received against each of the Movant Defendants based on the same factual allegations. Has Farmers sufficiently pled its money had and received claim against each of the Movant Defendants given that its pleadings only contain conclusory allegations that Movant Defendants received money?

Answer: **NO**.

III.     **Introduction & Summary of Argument**

This lawsuit is not about righting wrongs. This lawsuit is instead a business tactic. Farmers, a group of insurance companies involved in the business of providing insurance for automobile accident victims, is attempting to quell the business of various chiropractic, pain management, and other medical care providers who treat automobile accident victims by suing the providers.[1]

Movant Defendants are some the defendants in this lawsuit, one of several similar lawsuits Farmers and other insurance companies have filed in recent years.[2] Farmers generally alleges that Movant Defendants, along with other defendants, created and submitted fraudulent medical bills to personal injury attorneys representing automobile accident victims asserting claims against Farmers, who in turn incorporated those medical bills into settlement demands to Farmers under *G.A. Stowers Furniture Co. v. American Indemnity, Co*., 15 S.W.2d 544 (Tex. 1929). Farmers alleges that the medical bills have caused Farmers to pay more than it otherwise would in settlement payments.

Farmers, however, has not sued the personal injury lawyers who made the *Stowers* demands or the automobile injury victims to whom the alleged settlement payments were

---

[1] Courts have recognized the improper use of civil RICO claims to stigmatize businesses. *See, e.g., Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990) (recognizing that mere assertion of RICO claims may have stigmatizing effect on named defendants); *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1418 (3d Cir. 1997) (recognizing that fraud claims pose threat to business' reputation); *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) (affirming dismissal of RICO claim and warning against permitting a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence" (*quoting Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975)).

[2] *See*, for example, *Farmers Texas County Mutual Insurance Co., et al., v. Health Medical Practice Associates, et al.*, Cause No. 4-20-cv-04152 currently pending in front of this Court.

2

made—both of whom would have represented to Farmers that any submitted medical bills were necessary and genuine. Farmers has not even sued all the medical professionals whose bills were incorporated into the *Stowers* demands.[3] Instead, Farmers has chosen to sue over 20 different defendants working in or somehow connected to the chiropractic and pain management fields, none of whom had direct contact or communications with Farmers, and seems to want to invalidate the entire sub-fields of chiropractic medicine and pain management as fraudulent. That effort should not stand.

In this lawsuit, Farmers brings two claims against all defendants: a claim under RICO § 1962(c) and a common law claim for money had and received. Neither claim has been pled properly, and thus both claims should be dismissed.

The RICO claim fails for a multitude of independent reasons. Farmers fails to establish RICO standing because it has not adequately plead the required injury causation to maintain a RICO claim. Farmers fails to adequately plead the necessary element of a RICO "enterprise.;" Farmers fails to plead allegations showing that ***each*** of Movant Defendants is a "culpable person" who could be liable under § 1962(c). And Farmers fails to adequately plead fraud—the alleged racketeering activity underpinning the RICO claim—vis-à-vis ***each*** of Movant Defendants, as required by federal pleading standards and RICO case law.

---

[3] For example, in one "representative" Stowers demand attached to the Complaint, there were over $12,600 in medical bills–including from the City of Houston EMS, Memorial Hermann, and ACS Primary Care Physicians. The medical bills from defendants named in this lawsuit totaled just $3,855—or about 30% of the total medical bills. *See* ECF No. 53-6 at 6. *See also* ECF No. 53 at ¶ 99 ("The bills and corresponding mailings, which comprise the pattern of racketeering activity identified through the date of this Complaint, are described in part in the representative samples of these bills and supporting documentation attached as Exs. U1-U10.").

The money had and received claim fares no better. Farmers' Complaint is completely devoid of any material allegations that could establish the money had and received claim. Even under the most lenient of readings, the operative Complaint does not even factually allege that Movant Defendants received any money that in good conscience and equity belongs to Farmers.

The Court should dismiss the claims against Movant Defendants.

## IV.    <u>Summary of Allegations</u>

According to Farmers, its alleged damages arise from paying settlements on various BI, PIP, and UM insurance claims. ECF No. 53. at ¶ 16. "BI" claims are bodily injury claims, including personal injury protection ("PIP") claims, made by individuals not substantially at fault for automobile accidents to the insurance companies of the individuals who are substantially at fault for such accidents. *Id*. at ¶ 9. "UM" claims are underinsured/uninsured motorist claims made by individuals to their own insurance companies if their recoveries under BI claims are insufficient to compensate for economic and non-economic losses because of an accident. *Id*. at ¶ 9.

Farmers complains that personal injury attorneys representing "the patients in BI Claims, PIP Claims, and UM Claims" submitted medical bills and documentation from the defendants named in this lawsuit "to Farmers to support written demands to settle the claims within 30 days, and often within 14 days." *Id*. at ¶ 14. Farmers contends that defendants' medical bills and documentation, but notably not the medical bills and documentation from other providers, "are not credible . . . and evidence overwhelming

4

overlap in patient information pertaining to family history, exercise habits, diet and nutrition, gait, symptoms prior to the accident, orthopedic testing results, neurological findings, treatment recommendations regardless of age, gender, or injury. . . . [and] identical grammatically incorrect sentencing and missing punctuation." *Id*. at ¶ 97. Farmers does not, however, identify a single patient where one of Movant Defendants' medical records contains knowingly false information. *See, generally, id*.

The Complaint implies that Texas law compelled Farmers to make settlement payments to various automobile accident victims. Specifically, Farmers contends that, under Texas law, "insurers may be subject to substantial liability if they fail to accept 'reasonable' settlement demands on BI Claims"—specifically under the *Stowers* doctrine. *Id*. at ¶ 10. Farmers only conclusorily alleges that it may not "have the opportunity to adequately investigate those records due to the time-limited nature of the claims." *Id*. at ¶ 98.

Farmers alleges that defendants' allegedly wrongful conduct began "as early as 2016," *id*. at ¶ 18, but "Farmers did not discovery and should not have reasonably discovered that its damages were attributable to the Defendants' conduct until May 2017." *Id*. at ¶ 107.

## V.   <u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503

F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When reviewing a Rule 12(b)(6) motion to dismiss, the Court "must accept all well-pleaded facts as true." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). But the Court does not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *Southland Sec. Corp. v. INSpire Ins. Sols.*, Inc., 365 F.3d 353, 361 (5th Cir. 2004); *see also Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 246 (5th Cir. 2010).

Finally, on a motion to dismiss, the Court may also consider any exhibits attached to the complaint and matters of public record. *Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).[4]

## VI.   <u>Argument & Authorities</u>

### A. **Farmers' allegations cannot establish a viable RICO claim.**

Farmers pled a claim under § 1962(c) of RICO. ECF No. 53. at ¶¶ 94-100. To have standing to pursue a civil RICO claim, a plaintiff must allege a direct injury to his business

---

[4] Movant Defendants cite to the exhibits to the Complaint in this Motion to Dismiss. Movant Defendants note, however, that some of the exhibits appear to not be properly redacted to protect all potentially personal identifying information.

or property resulting from the conduct constituting a violation of RICO *See, e.g., Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, (1985); *State of Texas v. Enter. Companies, Inc, 85-5519*, 1986 WL 31561, at *1 (S.D. Tex. Jan. 7, 1986) ("The proper RICO plaintiff is the party who suffered direct injury as a result of a RICO violation.").

If a plaintiff establishes standing, then under RICO § 1962(c) a plaintiff must allege (and eventually prove): "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993). On a § 1962(c) claim, the "conduct" must be the operation or management of the alleged RICO enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993).

There are four **independent** reasons the Court should dismiss Farmers' RICO claim against all Movant Defendants:

1. Farmers' allegations do not establish the requisite RICO standing because Farmers cannot establish causation. Moreover, the applicable statute of limitations proscribes some if not all of Farmers' alleged RICO claims/damages.

2. Farmers' allegations cannot not establish a viable RICO enterprise.

3. Farmers' allegations cannot establish that each Movant Defendant is a liable "culpable person" under § 1962(c).

4. Farmers' allegations fail to adequately plead that each Movant Defendant committed racketeering activity (*i.e.*, fraud) that caused Farmers' putative damages.

## 1. Farmers does not adequately allege RICO causation, and its affirmative pleadings trigger a statute of limitations defense.

### a. Farmers has not adequately alleged causation.

A RICO plaintiff "must show that the violation was the but-for and proximate cause of the injury." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015). Proximate

cause "requires some direct relation between the injury asserted and the injurious conduct alleged." *Garcia v. Lion Mexico Consol. L.P.*, 2018 WL 6427350, at *8 (W.D. Tex. Sept. 14, 2018). "[T]he presence of intervening factors breaks the causal chain between predicate acts and injury, thereby precluding a proximate cause finding." *Id.* (internal quotation marks omitted). "'[T]he central question . . . is whether the alleged violation led directly to the plaintiff's injuries.'" *Id.* (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).

Here, Farmers fails to plead facts sufficient to establish that Movant Defendants caused Farmers to suffer the alleged damages. *Plambeck* is informative on this point. In *Plambeck*, chiropractic clinics used telemarketers to identify potential patients in motor vehicles accidents, convinced the accident victims to agree to chiropractic services, and then filed third-party claims *directly* with the at-fault party's insurer to obtain payment for those services. *Plambeck*, 802 F.3d at 671 ("The defendants would convince them to receive unnecessary chiropractic services, then would file third-party claims against the at-fault party's insurer. . . At a clinic, the patient would sign several forms, including an Assignment of Benefits that allowed the clinic to collect directly from the insurer."). The Fifth Circuit relied on these facts to find that the plaintiffs had established proximate cause for injuries related to those bills.

Farmers' allegations, even assuming they are true, are dispositively different and cannot establish a proximate cause between Movant Defendants' alleged conduct and Farmers' alleged damages. In this case, unlike in *Plambeck*, Farmers alleges that Movant Defendants submitted medical bills to their patients' attorneys, who then <u>chose</u> to submit

the bills and supporting documentation to Farmers as support for their settlement demands (under the *Stowers* doctrine) along with other providers' bills. *See* ECF No. 53 at ¶ 14.[5] Movant Defendants did <u>not</u> submit bills to Farmers directly for payment.

Farmers does not even allege in a non-conclusory manner that Movant Defendants knew what insurance company their patients used or might have a claim against or that Farmers, specifically, would ultimately receive the any medical bills related to Movant Defendants. Farmers does not adequately allege that its adjusters did not have the opportunity to review the bills and records, including the exact same bills and records that Farmers now claims are clearly fraudulent on their face, before responding to any particular settlement demand. Farmers does not factually allege that Movant Defendants' bills specifically caused Farmers to offer any particular settlement amount, as opposed to, for example, the severity of an individual patient's injuries or the circumstances of the underlying accident.

This failure is particularly telling when the demands were also supported by other providers' bills—providers who are not defendants. For example, in one *Stowers* demand attached as a "representative" example to the Complaint, the City of Houston EMS, Memorial Hermann Southwest Hospital, primary care physicians, and pharmacy bills were all submitted along with bills from Movant Defendants 1st Choice Accident & Injury and

---

[5] "To facilitate their scheme, [Defendants] . . . provide these fraudulent documents and bills to the PI Attorneys representing the patients in BI Claims, PIP Claims, and UM Claims who, in turn, submit the bills and documentation to Farmers to support written demands to settle the claims within 30 days, and often within 14 days."

ProHealth Medicine. *See, e.g.*, ECF No. 53-6 at 6 (Ex. U6 to Complaint). The bills from the two Movant Defendants represent just 30% of the total medical expenses incorporated into the demand. *See id.* Exhibit U8 to the Complaint presents an even more jarring example. In a *Stowers* demand seeking settlement of $30,000 (and there is no evidence how much, if anything, was eventually paid out on a settlement), there is a bill on 1st Choice Accident & Injury letterhead for $200 but a bill from Ad Hospital East LLC (not a defendant) for $9,200 in ER fees. ECF No. 53-8 at 3, 5, 10. Such unchallenged medical bills defeat the required causation element on Farmers' RICO claim. *See Farmers Ins. Exchange v. First Choice Chiropractic & Rehabilitation*, 2016 WL 10827072, at *21-22 (D. Or. 2016 Feb. 25, 2016) (holding that plaintiffs who conceded that some of the bills submitted by doctors were legitimate could not show that the alleged overstatement of other bills proximately caused plaintiffs to settle cases).

Without more, there are too many intervening factors between Movant Defendants' alleged conduct and Farmers' alleged damages to establish proximate cause. The Court should therefore dismiss State Farm's RICO claim.

### b. Farmers pleads itself into a Statute of Limitations problem, which also highlights causation flaws.

Farmers alleges that the alleged "scheme began at least as early as 2016." ECF No. 53 at ¶ 17. Farmers then states that it "did not discover and should have reasonably discovered that its damages were attributable to Defendants' conduct until May 2017." *Id.* at ¶ 107. Yet Farmers did not file its lawsuit ***for over five years***, filing on June 24, 2022. *See* ECF No. 1.

At a minimum, the Court should dismiss Farmers' claims (and damages) that pre-date June 24, 2018 because even the most generous statute of limitations expired for any claims that began to accrue before that date. The Supreme Court held that a four-year statute of limitations applies to all civil RICO actions. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc*., 483 U.S. 143, 156 (1987). The statute of limitations begins to run upon discovery of an injury, even if a plaintiff is unaware that the injury stems from an (alleged) pattern of racketeering. *Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("we have been at pains to explain that discovery of the injury, not discovery of the other elements of the claim, is what starts the clock").[6] Dismissal of a RICO claim is appropriate if a plaintiff alleges fact in its complaint that establish a statute of limitations affirmative defense. *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004).

Moreover, Farmers makes no attempt to explain is why, having discovered the alleged scheme in May 2017, Farmers waited ***more than five years*** to bring its RICO and money had and received claims, and why Farmers continued to settle PIP, UM, and BI claims supported by the allegedly fraudulent medical bills from various defendants. Farmers itself chose any settlement amounts, Farmers chose the bases for any settlement amount, and Farmers itself chose whether to challenge certain medical bills or not. Farmers should not now, after more than five years of being aware of the alleged problems with

---

[6] *See also Love v. Nat'l Med. Enters*., 230 F.3d 765, 777 (5th Cir. 2000) (statute of limitation runs when plaintiff has reasonable notice of his injury, not the alleged fraud).

defendants' medical bills, be able to have buyer's remorse and attempt to claw-back legal settlement money paid to third parties not involved in this lawsuit.

### 2. Farmers does not adequately plead a RICO enterprise.

Farmers' RICO claim also fails because Farmers does not adequately plead the "enterprise" element of a RICO claim. "To establish liability under § 1962(c), a plaintiff must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is simply not the same 'person' referred to by a different name." *Koenig v. Aetna Life Insurance Co.*, 2015 WL 12777187, *1 (S.D. Texas May 29, 2015). A RICO enterprise must be more than an association of entities or affiliated individuals conducting their normal business functions. *Brittingham v. Mobil Corp.*, 943 F.2d 297, 301 (3d Cir. 1991). Facts describing "the ordinary operation of garden-variety" business relationships do not establish a RICO enterprise. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009).

Even where there is direct communication among alleged enterprise members, there is no RICO enterprise absent evidence that those communication or other activities were undertaken on behalf of the enterprise rather than for individual, self-interested benefit. *See United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013). In *Walgreen*, the Seventh Circuit affirmed the dismissal of a RICO complaint where the allegations failed to plausibly establish that the alleged RICO enterprise members participated in the affairs of the other, or siphoned profits to the alleged enterprise or its participants. *Id.* at 855. Instead, the

complaint alleged activities "entirely consistent with . . . each going about its own business." *Id*.

Here, the word "enterprise" appears only once in the Complaint, and, even then, there is no description of what the enterprise is. *See* ECF No. 53 at ¶ 95 ("1st Choice Accident & Injury is . . . a participant in an 'enterprise,' as that term is defined in 18 U.S.C. 1961(4), that engages in, and the activities of which affect, interstate commerce."). The Complaint then lists 24 other parties[7] that Farmers alleges "have been employed by and/or associated with 1st Choice or its affiliate companies." *Id*. at ¶ 96. But at no point does the Complaint actually define what the enterprise is. Merely reciting statutory language and using—only once—the word "enterprise" does not sufficiently plead a RICO case. *See Vulcan Golf, LLC v. Google, Inc.*, 2008 WL 2959951, at *3 (N.D. Ill. July 31, 2008) (explaining that rote recitations of legal requirements for an enterprise to be insufficient).[8]

---

[7] Only 23 of the 24 are named defendants, however.

[8] If Farmers contends that the enterprise is 1st Choice Accident & Injury, then the Court should independently dismiss 1st Choice Accident & Injury as a defendant. Courts have uniformly held that a party cannot both be a RICO enterprise and a culpable person under § 1962(c). *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190-91 (1st Cir. 1996) (affirming dismissal of RICO claim where plaintiff failed to identify an enterprise distinct from defendant); *Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 23 (1st Cir. 1988); *Official Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 668 (2d Cir. 1989); *Bennett v. U.S. Trust Co. of New York*, 770 F.2d 308, 315 (2d Cir. 1985); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 263 (3d Cir. 1995); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1163-1164 (4th Cir. 1994); *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 840 (4th Cir. 1990); *In re Burzynski,* 989 F.2d 733, 743 (5th Cir. 1993); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 583 (5th Cir. 1992); *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 377 (6th Cir. 1993); *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir. 1989); *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645-47 (7th Cir. 1995); *Bennett v. Berg*, 685 F.2d 1053, 1061 (8th Cir. 1982), *on reh'g*, 710 F.2d 1361 (8th Cir. 1983); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1396 (9th Cir. 1986); *Garbade v. Great Divide Mining & Milling Corp.*, 831 F.2d 212, 213 (10th Cir. 1987); *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1187 (10th Cir. 2019) (sheep rancher associations did not form distinct associations in fact with their members) ; *United States v. Goldin Indus., Inc.*, 219 F.3d 1268, 1271 (11th Cir. 2000); *Yellow Bus Lines, Inc. v. Drivers Local Union 639*, 883 F.2d 132, 139 (D.C. Cir. 1989), *on reh'g in part*, 913 F.2d 948 (D.C. Cir. 1990).

3.      **Farmers' allegations are insufficient to establish liability against Movant Defendants as a "culpable person" under § 1962(c).**

RICO § 1962(c) imposes civil liability only on those who "conduct or participate, directly or indirectly, in the conduct of [an alleged] enterprise's affair through a pattern of racketeering." 18 U.S.C. § 1962(c). This is often referred to as the "culpable person" element of a § 1962(c) RICO claim.

In *Reves v. Ernst & Young*, the Supreme Court limited the reach of § 1962(c) by holding that liability for "conducting" or "participating in the conduct of" an enterprise is limited to persons who exercise a managerial role in the enterprise's affairs. 507 U.S. 170, 178-79 (1993). In other words, a plaintiff must show that any given defendant directed the enterprise's affair. *Id*. at 178-184. "Receiving funds or materials on its own, without more, does not show that [a party] actually operated the scheme to obtain those funds or materials." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012). Importantly, to violate § 1962(c), a defendant must operate or manage the alleged *RICO enterprise's* affairs, not merely the defendant's own affairs. *United Food & Commercial Workers Unions v. Walgreens Co*., 719 F.3d 849, 853-56 (7th Cir. 2013).

Even under the most generous of readings, the Complaint does not satisfy this burden against each individual Movant Defendant. Farmers describes 1st Choice Accident & Injury as a participant in an "enterprise" as that term is defined under RICO. ECF No. 53 at ¶ 95. Farmers then lists 24 other defendants[9] as having "knowingly conducted and/or

---

[9] Farmers includes in this list "Origin Consulting, LLC" which is not a named party in the lawsuit. *See* ECF No. 53 at ¶ 96.

participated, directly or indirectly, in the conduct of the 1st Choice's affairs through a pattern of racketeering through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute . . ." *Id*. at ¶ 96. This simply recites the language of § 1962(c). Farmers later alleges that "[e]ach of the [defendants] participate in this scheme understanding the fraudulent nature of their joint activities, and with the specific intent to defraud Plaintiffs with their fraudulent records." *Id*. at ¶ 98. **Yet nowhere** are there allegations against any of the Movant Defendants about how they <u>operate</u> or <u>manage</u> the alleged but unidentified enterprise's affairs, as required by the Supreme Court.

The closest Farmers comes to alleging that a Movant Defendant operates or manages a RICO enterprise is when Farmers alleges that Andy Huynh and Charlie Huynh are "1st Choice's governing persons" and that both also "own" 1st Choice, which in turn Farmers alleges is a participant in an enterprise. *Id*. at ¶¶ 36-38, 95. But merely owning or governing the legal entity that is 1st Choice Accident & Injury in its normal business is not synonymous with directing the wrongful conduct of a putative (and undefined) RICO enterprise. *See Cruz v. FXDirectDealer*, LLC, 720 F.3d 115, 121 (2d Cir. 2013) (explaining that a defendant must operate or manage the RICO enterprise's affairs, not merely its own affairs).

For the remaining Movant Defendants, the Complaint likewise contains no allegation that state that *any* of them—not to mention *all* of them—operate or manage the an alleged RICO enterprise. Mere participation in an enterprise is not enough. *See United States v. Viola*, 35 F.3d 37, 41 (2d Cir. 1994) ("since *Reves*, it is plain that the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise,

15

without more, is insufficient to bring a defendant within the scope of § 1962(c)"); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727-28 (7th Cir. 1998) (dismissing RICO claim because allegations established only participation in enterprise, not operation or management of enterprise). Accordingly, Movant Defendants cannot be held liable under § 1962(c) even if all well-pled allegations in the Complaint are presumed true.

| Movant Defendant | Allegation that Movant Defendant **Operated** or **Managed** Affairs of An Alleged Enterprise. |
|---|---|
| 1ˢᵗ Choice Accident & Injury LLC | None |
| Andy Huynh, D.C. | None. |
| Charlie Huynh, D.C. | None. |
| Danielle Bui | None |
| Susan Hanh Huynh | None |
| Nancy Huynh, D.C. | None |
| Scott M. Hung, M.D. | None |
| Ali Mazloom, M.D. | None |
| Houston Pain Relief & Wellness Clinic, LLC | None |
| Smart Choice Chiropractic, LLC | None |
| Medical Center Chiropractic, LLC | None |
| Celebrity Spine & Joint, LLC | None |
| ProHealth Medical Group Management, LLC | None |
| Origin Spine Institute, LLC | None |
| Origin MRI and Diagnostics, LLC | None |
| Millennium Pain & Surgical Institute, LLC | None |

4. **Farmers' RICO claim against Movant Defendants fails because Farmers' allegations do not adequately plead that *each* of Movant Defendants committed racketeering activity.**

For a claim under § 1962(c), a plaintiff must show how ***each*** defendant committed the racketeering activity: "[t]he requirements of § 1962(c) must be established as to each individual defendant," and "[t]he focus of § 1962(c) is on the individual patterns of

racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise." *Craig v. Outdoor Adver., Inc. v. Viacom Outdoor, Inc*., 528 F.3d 1001, 1027-28 (8th Cir. 2008) *cert denied*, 129 S.Ct. 1000 (2009). Farmers falls far short of this pleading requirement.

Farmers alleges mail fraud as the underlying predicate acts or racketeering activity to support its RICO claim. ECF No. 53 at ¶¶ 96, 99. "For the predicate act of mail fraud, a plaintiff must allege: (1) a scheme to defraud; (2) interstate or intrastate use of the mails; (3) use of the mails in connection with the scheme to defraud; and (4) actual injury to the plaintiff." *Arruda v. Curves Int'l, Inc*., 861 Fed. Appx. 831, 834 (5th Cir. 2021). The first element, "scheme to defraud," includes a *mens rea* and specific intent to defraud. *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 429, n. 87 (5th Cir. 1990), *opinion modified on denial of reh'g* (Apr. 27, 1990).

Where, as here, a RICO claim is predicated on allegedly fraudulent conduct, Farmers must also satisfy Rule 9(b)'s heightened pleading standard. *See Gonzalez v. Bank of Am*., 2011 WL 13261985, at *6 (S.D. Tex. Feb. 20, 2011). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Rule 9(b) requirements are strict, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp*., 565 F.3d 200, 207 (5th Cir. 2009); *see also Tel-Phonic Serv's, Inc. v. TBS Int'l, Inc*., 975 F.2d 1134, 1138-39 (5th Cir. 1992) (a plaintiff that bases its RICO claim on mail or wire fraud must allege the time,

place, content of, and parties to the fraudulent communications, and must show that the plaintiff was deceived by those communications).

At a minimum, the "who, what, when, where, and how" of the fraud must be laid out as to *each defendant*. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997); *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986). As stated in *Gonzales*, "*g*eneral allegations, which lump all defendants together and fail to segregate the alleged wrongdoing of one from those of another, cannot meet the requirements of Rule 9(b)." 2011 WL 13261985, at \*6.

Farmers has made no effort to explain how ***each*** Movant Defendant allegedly committed mail fraud (and certainly not each element thereof), and so the RICO claim against each Movant Defendant should be dismissed for that reason alone.[10]

### a. Moreover, Farmers' allegations of "fraud" are conclusory, contrary to common sense, and cannot support a viable RICO claim.

As the Court is aware, it is not enough to show "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Indeed, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id*. Further, as the Fifth Circuit has explained, the Court should not accept unwarranted factual inferences or conclusory allegations as true. *Southland*, 365 F.3d at 361. Here, Farmers' allegations of what is "fraudulent" about different defendants'

---

[10] Examples of this pleading failure are numerous. For example, Origin Spine Institute and Origin MRI and Diagnostics appear nowhere on any example medical bill or record in the Complaint or accompanying exhibits. The only allegations against Susan Huynh and Danielle Bui are that each is married to a fellow Movant Defendant and each may have ownership in a Movant Defendant entity or entities. But there is nothing that even implies specific fraudulent activity for these Movant Defendants.

medical bills do not actually evidence any fraud, nor do they satisfy Rule 9's heightened pleading standard.

For example, despite repeatedly using the word "fraud" or "fraudulent" to describe the various defendants' records, Farmer's "proof" that defendants did not provide the services described in their records is based solely on the conclusory idea that defendants were using templates to help them efficiently fill out patient records. *See* ECF No. 53 at ¶ 91 (bills "are fraudulent in that they [are] grossly templated and do not reflect accurate information pertaining to the actual patients"); ¶ 97 ("the bills and supporting document . . . are not credible and evidence a medical build-up scheme with significant templating"). But the use of templates is not fraudulent, unlawful, or even uncommon—and Farmers cites not authority to the contrary.

Moreover, Farmers does not identify a single patient for whom (a) medical bills were created and eventually submitted to Farmers (b) who did not receive the services indicated in those medical bills, or (c) about whom any of defendants knowingly indicated materially false information about the patient. Allegations that any medical services were unnecessary or not rendered are completely conclusory, devoid of even the most miniscule factual enhancements. Farmers various citations to health statistics are likewise inapposite and, ultimately, insufficient. *See, e.g., U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (plaintiff's allegation of medically unnecessary services based on statistical studies "amount to nothing more than speculation, and thus fail to satisfy Rule 9(b)"). And Farmers' conspicuous silence on even a single example alleging that any Movant Defendant knowingly misrepresented a material patient fact on a

19

medical bill or supporting documentation is telling, and dispositive. Farmers has not met Rule 9(b)'s heighted pleading standard.

The other alleged fraudulent aspects of defendants' various medical bills do not warrant an inference of fraud, either. Farmers' conclusory allegations of fraud are based on alleged "patterns [and] overlap in patient information pertaining to family history, exercise habits, diet and nutrition, gait, symptoms prior to the accident, orthopedic testing results, neurological findings, treatment recommendations regardless of age, gender, or injury . . . [and] grammatically incorrect sentencing and missing punctuation [in patient records]." ECF No. 53 at ¶ 97. Some of these allegations are belied by common sense. For instance, it makes sense that automobile accident victims who are visiting chiropractic and pain management facilities to treat their accident injuries would report that they did not experience the same symptoms before the accident. The patient pool for these medical services is self-selective, just like all people who visit orthodontic offices would report that they are seeking potential orthodontic treatment.

Farmers' discussion of diet and nutrition is perhaps most illustrative of its defective theory of fraud. Take for example the following allegation from the Complaint, which Farmers alleges supports its allegation that the various patient reports stemming from all defendants (not just Movant Defendants) are fraudulent:

> Virtually 100% of the patients who sought care with the 1st Choice facility had reports that noted these patients would eat "2 to 3 meals a day." NO matter their age, 2.5 years old, to 73 years old. Whether or not the patient weighed 409 pounds or 29 pounds, the frequency of consumed meals was consistently reported the same.

*Id*. ¶ 76. Putting aside the fact that Farmers then fails to identify a single patient where this was apparently inaccurate, though the omission is telling, what Farmers is really stating here is that it is abnormal for patients to almost report uniformly that on average they consume breakfast, lunch, and dinner—or at least two of the three—each day.

Farmers' complaints about the absence of periods in patient records are similarly irrelevant to whether the patient records themselves are fraudulent. *See id*. at ¶¶ 61-65. Not once does Farmers explain why the presence of periods would change its analysis. Nor is it facially plausible, as required by *Twombly* and its progeny, that the absence of periods in some patient records is indicative of fraud. It is just as possible—and likely more possible—that the absence of periods is a copy quality issue or scanning defect. Moreover, there are periods in some of the patient records that Farmers attaches to its complaint. *See, e.g.*, ECF No. 53-3 at 17 (Smart Choice patient record). Perhaps coincidentally, but likely not, the patient records with periods are of higher visual quality than the excepts Farmers highlights in its Complaint.

Other items in Farmers' laundry list of complaints allegedly evidencing fraud fall short. When Farmers complains that there are instances where some medical providers signed patient records in short succession at the end of the day, *see id*. at ¶ 66, Farmers ignores the plainly obvious possibility that those practitioners merely signed (rather than drafted) all their patient reports for that day at the end of the day before leaving work. Certainly, Farmers outright ignores that there are copious examples in its Complaint (and its exhibits) of patient records being signed at all times of the day. *See, e.g.*, ECF Nos. 53-2 at 41 (signed at 1:24 p.m.), 53-2 at 45 (signed at 5:49 p.m.), 53-3 at 20 (signed at 3:09

p.m.), 53-7 at 13 (signed at 10:13 a.m.), and 53-7 at 14 (signed at 9:49 a.m.). But more importantly, Farmers makes no factual allegations that the contents of the reports, no matter when signed, are inaccurate. Any such allegations are conclusory.

At bottom, what Farmers calls "fraud" does not give rise to a reasonable inference of fraud. This, combined with the fact that Farmers has failed to even make conclusory allegations of fraud against each of the Movant Defendants, warrants dismissal of the RICO claim.

## B. Farmers has not pled a claim against Movant Defendants for money had and received for which relief can be granted.

To state a viable money had and received claim, Farmers must allege that each Movant Defendant was paid money for dishonest claims. *See Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004). Here, Farmers falls short of this pleading requirement—for two principal reasons.

### 1.     First, Farmers' allegations are impermissibly conclusory.

Farmers' allegations are impermissible threadbare recitals of the elements. As explained by the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor do "naked assertion[s] devoid of further factual enhancement." *Id*. But threadbare recitals are exactly what Farmers' money had and received allegations are.

For instance, Farmers alleges that it conferred "a benefit upon [all defendants] by paying more than $14 million for the PIP Claims and to settle the BI and UM Claims at issue, . . . [and that defendant's allegedly] fraudulent bills and supporting documentation

were at the very least a substantial factor in inducing Farmers to pay PIP Claims and to settle BI and UM Claims that they otherwise might not have settled, and by paying more . . . than they would have." ECF No. 53 at ¶ 103. But this allegation is about money paid *to private plaintiffs in the various personal injury lawsuits concerning automobile accidents*. The allegation is not that $14 million was paid to the various defendants (and specifically, not Movant Defendants) in this lawsuit. There is no factual allegation—as opposed to naked conclusory allegation—that any of the Movant Defendants received any settlement money. Farmers necessarily admits this in its Complaint. *See id.* at ¶ 105.[11]

Notably, Farmers does not even make conclusory allegations against *each* of the Movant Defendants. For example, for some defendants in the listing of the parties, Farmers makes the conclusory statement that they "received a portion of the funds obtained through the [alleged scheme]." *See id.* at ¶¶ 42-59. This conclusory allegation is not enough, of course. But against Movant Defendants 1st Choice Accident & Injury, Charlie Huynh, Andy Huynh, Danielle Bui, Susan Huynh, and Nancy Huynh, the Complaint contains no such conclusory allegation. *See id.* at ¶¶ 36-41. This omission as to these specific Movant

---

[11] A sentence in the paragraph alleges that "Farmers is not currently aware of the precise amount of money Defendants received" to give the impression that the issue is one of precision. *See* ECF No. 53 at ¶ 105. But read in context, Farmers implicitly admits that it also does not know if *any* of the Movant Defendants received settlement money. It is equally possible that the patients paid Movant Defendants directly for the services rendered before receiving any settlement funds from Farmers, and that patients kept all settlement monies. Farmers has not moved the needle from possible to plausible.

Moreover, Farmers does not even try to provide a number to represent the portion of the $14 million in settlement funds that defendants (including Movant Defendants) could have received based on the alleged fraudulent billing. If Farmers knows (as it alleges in the Complaint) that it paid out $14 million on various insurance claims in which at least one of the named defendants had provided bills to the covered patient, then Farmers must be able to allege the amount billed by defendants relative to those claims—or at least for the 497 sample size it discusses in the Complaint. *See id*. at ¶ 60 (indicating that Farmers had reviewed at least 497 claims files). But Farmers chose not to, perhaps because it cannot; because the number would be materially low; or perhaps because the point of this lawsuit is not ultimate relief but rather intimidation.

Defendants only compounds the conclusory flaws plaguing Farmers' more general allegations.

### 2. Second, to the extent the exhibits to the Complaint constitute well-pled allegations, the applicable statute of limitations proscribes recovery.

Farmers' money had and received claim against each of Movant Defendants fails due to the applicable statute of limitations. As explained earlier, Farmers affirmatively pled that it discovered or should have discovered the alleged wrongful conduct giving rise to its lawsuit by May 2017. *Id*. at ¶ 107. Farmers did not file this lawsuit until June 24, 2022, however, more than five years later. *See* ECF No. 1.

Under Texas law, the limitations period for an action for money had money received is two years. *Merry Homes Inc. v. Dao*, 359 S.W.3d 881, 884 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Elledge v. Friberg-Cooper Water Sup*., 240 S.W.3d 869, 870-71 (Tex. 2007) (Tex. Civ. Prac. & Rem. Code § 16.003 applies to extra contractual actions for unjust enrichment); Tex. Civ. Prac. & Rem. Code § 16.003 (two-year statute of limitation). Accordingly, at a minimum, Farmers cannot recover on any claims that began to accrue prior to June 24, 2020.

Farmers' entire theory of the case is that it has been injured by being "forced" to pay out on *Stowers* demands within "30 days or less." *See* ECF No. 53 at ¶¶ 10, 14. Farmers attached ten such "representative" *Stowers* demands to its Complaint. *See id.* at ¶ 99 (citing to Exhibits. U1-U10).[12] Nine of those ten demands are dated 2017-2019. *See* ECF Nos. 53-2 to 53-10. The tenth, Exhibit U1, is dated February 13, 2020. *See* ECF No. 53-1. Taking

---

[12] Notably, Farmers attached no documents or evidence of actual settlement.

Farmers' allegation that it necessarily had to pay the settlement within 30 days or less as true, Farmers would have paid this demand no later than mid-March 2020—still months before June 24, 2020, which is the earliest-in-time a money had and received claim would be viable based on Farmers' own pleadings and the filing date of this lawsuit. There simply is no factual allegations or evidence (discounting, as required, conclusory allegations) that Farmers paid any money on or after June 24, 2020 that was wrongfully obtained by Movant Defendants.

VII.   **<u>Conclusion</u>**

Farmers has not satisfied its pleading burden against each Movant Defendant. The pleading deficiencies reveal the true motive behind the lawsuit: intimidation, not merit. Why else would Farmers discover the allegedly wrongful behavior in May 2017 but not sue until June 2022? Accordingly, Movant Defendants respectfully request the Court to dismiss the claims against them.

Dated: May 5, 2023

Respectfully submitted,

**AHMAD, ZAVITSANOS & MENSING, PLLC**

*/s/ Sammy Ford IV*
**Sammy Ford IV**
Texas Bar No. 24061331
Federal I.D. 950682
sford@azalaw.com
1221 McKinney, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

**OF COUNSEL:**
**Jordan L. Warshauer**
State Bar No. 24086613
Federal I.D. 2994699
jwarshauer@azalaw.com
**Ian Marshall Sander**
Texas Bar No. 24117181
Federal I.D. 3609023
isander@azalaw.com
**Thomas Frashier**
Texas Bar No. 24126185
Federal I.D. 3712415
tfrashier@azalaw.com
1221 McKinney, Suite 2500
Houston, Texas 77010
(713) 655-1101 -Phone
(713) 655-0062 – Fax

Attorney-in-charge for Defendants 1st
Choice Accident & Injury, LLC, Phuc Vinh
"Charlie" Huynh, D.C., Phuc Kien "Andy"
Huynh, D.C., Phuc "Nancy" Hong Huynh,
D.C., Danielle Bui, Susan Hanh Huynh,
Houston Pain Relief & Wellness Clinic,
LLC, Smart Choice Chiropractic, LLC,
Medical Center Chiropractic, LLC,
Celebrity Spine & Joint, LLC, Scott M.
Hung, M.D., ProHealth Medical Group
Management, LLC, Ali Mazloom, M.D.,
Origin Spine Institute, LLC, Origin MRI
and Diagnostics, LLC; and Millennium Pain
& Surgical Institute, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on the May 5, 2023, a true and correct copy of the above document has been served via CM/ECF on all counsel of record.

*/s/ Sammy Ford IV*
Sammy Ford IV