United States District Court
Southern District of Texas
**ENTERED**
March 12, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, *et al.*, <br><br> Plaintiffs. <br><br> V. <br><br> 1ST CHOICE ACCIDENT & INJURY, LLC, *et al.*, <br><br> Defendants. | § § § § § § § § § § § § § CIVIL ACTION NO. 4:22-cv-02061 |

## **MEMORANDUM AND RECOMMENDATION**

This lawsuit is brought under the Racketeering Influenced and Corrupt Organizations Act ("RICO") by 13 affiliated insurance companies, collectively referred to as "Plaintiffs."[1] Plaintiffs settled personal injury claims against their insureds and now seek to recover the monies they paid to settle those claims. Plaintiffs are not, however, seeking recovery from their insureds or the personal-injury plaintiffs who sued their insureds. Instead, Plaintiffs assert RICO claims—and a Texas state-law money had and received claim—against 23 medical providers who treated the individuals who filed the underling lawsuits. After settling and releasing the parties in the underlying claims, Plaintiffs now contend the doctors and healthcare providers submitted false records and provided unnecessary medical services as part of a racketeering scheme to defraud Plaintiffs.

---

[1] Plaintiffs are Farmers Texas County Mutual Insurance Company; 21st Century Centennial Insurance Company; Farmers Insurance Company, Inc.; Fire Insurance Exchange; Texas Farmers Insurance Company; Foremost County Mutual Insurance Company; Foremost Insurance Company Grand Rapids, Michigan; Home State County Mutual Insurance Company; Truck Insurance Exchange; Mid-Century Insurance Company; Bristol West Specialty Insurance; Foremost Signature Insurance Company; and Farmers Insurance Exchange.

Defendants[2] have filed five separate motions to dismiss. *See* Dkts. 54, 58, 60–62. The motions to dismiss make many of the same arguments. Plaintiffs have filed one collective response to the motions to dismiss (*see* Dkt. 71), and Defendants have submitted reply briefs in support of their respective motions. *See* Dkts. 66–69,[3] 74, 76–78.

Having reviewed the briefing, the record, and the applicable law, I recommend Defendants' motions to dismiss be **GRANTED**. This case should be dismissed.

## BACKGROUND

According to the Amended Complaint, Plaintiffs bring this case

> based upon hundreds of medical bills and supporting documentation that are fraudulent, which 1st Choice Accident & Injury, and the other Defendants have knowingly submitted, or caused to be submitted, to Farmers depicting fraudulent evaluation reports and billing, including substantial templating, up-coding, overbilling, billing for services not rendered, and unwarranted diagnostic procedures, which pertain to individuals ("patients") who were involved in motor vehicle accidents and asserted claims for damages against Farmers or individuals who were eligible for insurance benefits under Farmers insurance policies.

Dkt. 53 at 2–3 (emphasis removed). Plaintiffs allege Defendants facilitated their racketeering operation by:

> (a) prepar[ing] fraudulent examination reports; (b) prepar[ing] fraudulent billing and medical reports documenting treatments that

---

[2] Defendants are 1st Choice Accident & Injury, LLC; Phuc Vinh "Charlie" Huynh; Phuc Kien "Andy" Huynh; Phuc "Nancy" Huynh; Danielle Bui; Susan Hanh Huynh; Houston Pain Relief & Wellness Clinic, LLC; Smart Choice Chiropractic, LLC; Maxwell Adu-Lartey; Medical Center Chiropractic, LLC; Celebrity Spine & Joint, LLC; Scott M. Hung; ProHealth Medical Group Management, LLC; David Singleton; Reid Singleton; See Loong Chin; Complete Pain Solutions PLLC; Matthew Dang; Chad Porter; Ali Mazloom; Origin Spine Institute, LLC; Origin MRI and Diagnostics, LLC; and Millennium Pain & Surgical Institute, LLC.

[3] These first four reply briefs were filed after the response deadlines to the motions to dismiss had passed and Plaintiffs had not filed a response. Each urged the court to construe Plaintiffs' failure to timely respond as an indication of no opposition to the motions to dismiss. Plaintiffs eventually received an extension of time to respond to the motions to dismiss, *see* Dkts. 72, 75, rendering these reply briefs irrelevant.

are not actually performed; and (c) provid[ing] these fraudulent documents and bills to [Personal Injury] Attorneys representing the patients in [Bodily Injury] Claims, [Personal Injury Protection] Claims, and [Underinsured/Uninsured Motorist] Claims who, in turn, submit the bills and documentation to Farmers to support written demands to settle the claims within 30 days, and often within 14 days.

*Id.* at 6.

The scheme allegedly began with 1st Choice Accident & Injury, LLC ("1st Choice"), a chiropractic provider owned by Defendants Phuc Vinh "Charlie" Huynh and Phuc Kien "Andy" Huynh ("the Huynhs"). The Amended Complaint includes the following graphic which, although hard to decipher, purportedly identifies the various connections among the Defendants.



*Id.* at 4. In short, Plaintiffs allege each Defendant "ha[s] been employed by and/or associated with 1st Choice or its affiliate companies" and "knowingly conducted and/or participated, directly or indirectly, in the conduct of . . . 1st Choice's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341." *Id.* at 33.

To support their claim that medical examination and billing reports are fraudulent, Plaintiffs "identified unusual patterns and similarities among [reports

pertaining to 497 patients], regardless of age, gender, weight, past medical history, or current injuries." *Id.* at 14. The fraud, Plaintiffs insist, is evidenced by repeated grammatical errors and missing punctuation in the reports; creation of reports within seconds of each other; uniformity of patient information, including gait, family history, exercise and nutritional habits, and symptoms prior to the accident; performance of the same orthopedic tests on the patients; and uniformity of neurological findings, treatment recommendations, and medical imaging.

In sum, Plaintiffs contend Defendants "submitted fraudulent bills with substantial templating and supporting documentation for continuing pain management that was not legitimately performed, or was not medically necessary, which in turn caused settlement checks to be deposited in the U.S. mails by" Plaintiffs. *Id.* at 33. Plaintiffs allege they have sustained more than $14 million in damages from settling and paying these allegedly fraudulent claims.

## RULE 12(b)(6) LEGAL STANDARD

A complaint should be dismissed if a plaintiff "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *see also Twombly*, 550 U.S. at 555, 557 (holding that "labels and conclusions" and "naked assertion[s]" devoid of "further factual enhancement" fail the Rule 12(b)(6) standard).

In deciding a Rule 12(b)(6) motion, I must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). As a result, motions to dismiss are

"viewed with disfavor and rarely granted." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quotation omitted).

## THE RICO CLAIMS

### A.  THE LAW OF RICO

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "Any person injured in his business or property by reason of a violation of section 1962" may file a RICO suit for treble damages, attorney's fees, and costs. *Id.* § 1964(c). "To state a claim under § 1962(c), a plaintiff must adequately plead that the defendant engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Additionally, "a RICO plaintiff . . . can only recover to the extent that[] he has been injured in his business or property *by reason of* the conduct constituting the violation." *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 644 (S.D. Tex. 2016). "[T]he central question a court must ask is whether the alleged violation led directly to a plaintiff's injuries. Links that are indirect, too remote, or purely contingent are insufficient." *Id.* (cleaned up).

### B.  PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE ENTERPRISE STATUS[4]

"In order to avoid dismissal for failure to state a RICO claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise." *Id.* at 648; *see also Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995) ("A plaintiff asserting a RICO claim must allege the existence of an enterprise."). An enterprise is "any individual, partnership, corporation,

---

[4] Defendants advance numerous arguments for dismissal. Because I find Plaintiffs fail to allege enterprise status, I need not address Defendants' other reasons for dismissal.

association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Accordingly, "[a] RICO enterprise can be either a legal entity or an association-in-fact." *Crowe*, 43 F.3d at 204. Because Defendants in this case are 23 different medical providers and physicians, Plaintiffs seek to allege an association-in-fact enterprise. *See* Dkt. 71 at 15 ("Plaintiffs have properly and sufficiently alleged an association-in-fact enterprise.").

"An association-in-fact enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a . . . consensual decision making structure." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988); *see also Boyle v. United States*, 556 U.S. 938, 946 (2009) ("[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."). Defendants argue Plaintiffs have not pleaded any of these elements. I will address each element in turn.

### 1. *Separate Purpose*

To start, a RICO enterprise "must be an entity separate and apart from the pattern of activity in which it engages." *Benhamou*, 190 F. Supp. 3d at 650. Thus, Plaintiffs "must plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

In a number of cases where insurance companies have sued medical providers under RICO, district courts have examined whether a pleading sufficiently alleges a separate purpose. As a general rule, district courts look to see whether the insurance companies have made "allegations that are capable of establishing that the enterprise provided services to a number of legitimate patients and began doing so before the alleged fraud even began." *Benhamou*, 190

6

F. Supp. 3d at 651. In *Benhamou,* the district court found the separate-purpose requirement satisfied because the insurance company alleged the medical providers regularly treated Medicare patients who were uninvolved in the defendants' allegedly fraudulent behavior, and it offered specifics of the providers' Medicare services. In stark contrast, the trial court in *Allstate Insurance Co. v. Donovan* found the separate-purpose requirement unsatisfied because the allegations were "not capable of establishing that the enterprise treats other, legitimate, patients, i.e., patients whose claims are not fraudulently inflated." No. H-12-cv-0432, 2012 WL 2577546, at *13 (S.D. Tex. July 3, 2012).

In this case, the Amended Complaint is devoid of *any* allegations that the chiropractic clinics, pain management companies, and medical professionals named as Defendants existed separate and apart from the alleged pattern of racketeering. Although Plaintiffs assert in their response that Defendants acted "in one common enterprise to provide their respective medical services AND engage in their racketeering activity," Dkt. 71 at 13, the Amended Complaint contains no allegations that Defendants provided services to legitimate patients.[5] To the contrary, Plaintiffs allege "[t]he pattern of treatment [provided by Defendants] DOES NOT reflect proper treatment of patients." Dkt. 53 at 3. "Aside from the commission of the alleged predicate acts, there appears to be nothing which binds the association together." *State Farm Mut. Auto. Ins. Co. v. Giventer*, 212 F. Supp. 2d 639, 650 (N.D. Tex. 2002). For this reason, Plaintiffs fail to adequately plead an association-in-fact enterprise.

### 2. *Ongoing Organization*

"The ongoing-organization element of enterprise status simply requires longevity sufficient to permit associates to pursue the enterprise's purpose."

---

[5] It is well-settled "that the sufficiency of a complaint rises or falls with the allegations contained in the lawsuit. A party may not rely on new facts asserted for the first time in a response to a motion to dismiss to defeat the underlying motion." *Diamond Beach Owners Ass'n v. Stuart Dean Co.*, No. 3:18-cv-00173, 2018 WL 7291722, at *2, n.2 (S.D. Tex. Dec. 21, 2018).

7

*Benhamou*, 190 F. Supp. 3d at 653 (cleaned up). Plaintiffs allege "Defendants' scheme began at least as early as 2016, and it has continued uninterrupted since that time." Dkt. 53 at 7. This allegation, although somewhat cursory, clearly satisfies the ongoing-organization element of enterprise status.

### 3. *Consensual, Decision-Making Structure*

Defendants also challenge the third element of an association-in-fact enterprise—that the members function as a continuing unit as shown by a consensual, decision-making structure.

I find Judge Sim Lake's analysis in *Donovan*—a case with similar allegations—particularly persuasive and relevant to this case:

> Plaintiffs have identified and described the specific roles that each defendant plays in providing healthcare services to their injured patients and running their respective businesses, but the brief descriptions of the defendants' separate business affairs are not capable of establishing that the alleged enterprise was or is an ongoing organization whose members function or functioned as a continuing unit for the purpose of executing the scheme to defraud insurance companies by inflating the value of bodily injury claims. Merely pleading that there are several businesses and individuals that sometimes work with each other and that some of the physicians made misrepresentations that caused plaintiffs to pay more in settlements, is not sufficient to plead that defendants have any liability under § 1962(c).

*Donovan*, 2012 WL 2577546, at *14. Along these lines, Plaintiffs do not describe any communications or understandings between Defendants that permit an inference that there existed a consensual, decision-making structure. Although a RICO enterprise "need not have a hierarchical structure or a 'chain of command,'" Farmers makes no allegations—cursory or otherwise—that Defendants worked together to advance the alleged racketeering operation. *Boyle*, 556 U.S. at 948. "[E]ach party's conducting of its own affairs is not . . . consensual decision making." *Gonzalez v. Bank of Am.*, No. H-09-2946, 2011 WL 13261985, at *7 (S.D. Tex. Feb. 20, 2011).

8

Tellingly, Plaintiffs do not even bother to define the purported enterprise in the Amended Complaint. Only once in the Amended Complaint is the term "enterprise" mentioned, and that solitary reference is nothing more than a rote recitation of the legal requirements for an enterprise. *See* Dkt. 53 at 33 ("1st Choice Accident & Injury is a Texas professional association and a participant in an 'enterprise', as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce."). Other than an isolated—and conclusory—allegation that the "[s]cheme is controlled by those most closely connected to the [Huynh] brothers," not a word in the Amended Complaint remotely suggests that any purported enterprise had an organized structure. *Id.* at 4. As such, Plaintiffs fail to plead that the members of the alleged enterprise function as a continuing unit as shown by a consensual, decision-making structure. *See Brunig v. Clark*, 560 F.3d 292, 297 (5th Cir. 2009) (affirming dismissal of a RICO claim for failure to "make plausible that either a legal enterprise or an association-in-fact existed" because the allegation was only "a conclusory statement, a recitation of the elements masquerading as facts").

\* \* \*

In sum, Plaintiffs fail to sufficiently plead an association-in-fact enterprise. There are no substantive allegations in the Amended Complaint to demonstrate that any purported enterprise (1) had a separate existence for any purpose other than committing the alleged racketeering activity; or (2) functioned as a continuing unit as shown by a consensual, decision-making structure. These elements are required to pursue a RICO claim past the pleading stage. Because Plaintiffs are unable to satisfy this pleading requirement, I recommend their RICO claim be dismissed.

## MONEY HAD AND RECEIVED CLAIM

Having recommended dismissal of Plaintiffs' RICO claim, no federal-law claim remains. All that is left is a money had and received claim under Texas common law. Defendants argue Plaintiffs fail to sufficiently plead facts in support

9

of their money had and received claim. Unsurprisingly, Plaintiffs fundamentally disagree.

Before I consider whether Plaintiffs plead sufficient facts to state a money had and received claim, I must decide whether this court should exercise supplemental jurisdiction over the remaining state law claim.[7] When there is original jurisdiction due to a federal question, as in this case, federal law provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Although supplemental jurisdiction may be proper,

> Section 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over a claim if: (1) "the claim raises a novel or complex issue of State law"; (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction"; (3) "the district court has dismissed all claims over which it has original jurisdiction"; or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

*D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 207 (5th Cir. 2018) (quoting 28 U.S.C. § 1367(c)). In deciding whether to exercise supplemental jurisdiction, I am guided by "the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011). As the United States Supreme Court has observed, supplemental jurisdiction over state law claims is a "doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

The general rule in the Fifth Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed" before trial. *Parker &*

---

[7] At least one plaintiff, "Farmers Texas County Mutual Insurance Company[,] is a citizen of the state of Texas." Dkt. 53 at 8. Numerous defendants are also Texas citizens. *See id.* at 9–14. Thus, this court cannot exercise original, diversity jurisdiction over the remaining state law claim.

10

*Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."). I see no reason to deviate from the ordinary rule in this case. The § 1367(c) factors and the common law factors of judicial economy, convenience, fairness, and comity all militate against exercising supplemental jurisdiction. I thus recommend the court decline to exercise jurisdiction over Plaintiffs' state law claim for money had and received.

## CONCLUSION

For the reasons discussed above, I recommend Defendants' motions to dismiss, *see* Dkts. 54, 58, 60–62, be **GRANTED** and this case be **DISMISSED**.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 12th day of March 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE