UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, 21st CENTURY CENTENNIAL INSURANCE CO., FARMERS INSURANCE COMPANY, INC., FIRE INSURANCE EXCHANGE, TEXAS FARMERS INSURANCE COMPANY, FOREMOST COUNTY MUTUAL INSURANCE COMPANY, FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN, HOME STATE COUNTY MUTUAL INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, and MID-CENTURY INSURANCE COMPANY, BRISTOL WEST INSURANCE COMPANY, FOREMOST SIGNATURE INSURANCE COMPANY, FARMERS INSURANCE EXCHANGE, § § § § § § § § § § § § § § § § § | |
| § Plaintiffs, § § | Case No. 4:22-cv-02061 |
| v. § § | |
| 1ST CHOICE ACCIDENT & INJURY, LLC, PHUC VINH "CHARLEY" HUYNH, D.C., PHUC KIEN "ANDY" HUYNH, D.C., PHUC "NANCY" HONG HUYNH, D.C., DANIELLE BUI HUYNH, SUSAN HANH HUYNH, HOUSTON PAIN RELIEF & WELLNESS CLINIC, LLC, SMART CHOICE CHIROPRACTIC, LLC, MAXWELL ADU-LARTEY, M.D., TEXAS REGIONAL CLINIC, LLC, MEDICAL CENTER CHIROPRACTIC, LLC, CELEBRITY SPINE & JOINT, LLC, SCOTT M. HUNG, M.D., PROHEALTH MEDICAL GROUP MANAGEMENT, LLC, DAVID SINGLETON, M.D., REID SINGLETON, M.D., SEE CHIN, M.D., COMPLETE PAIN SOLUTIONS, LLC, MATTHEW DANG, M.D., CHAD PORTER, M.D., ALI MAZLOOM, M.D., ORIGIN SPINE INSTITUTE, LLC, ORIGIN MRI and DIAGNOSTICS, LLC and MILLENNIUM PAIN & SURGICAL INSTITUTE, LLC, § § § § § § § § § § § § § § § § § § § § § § § § | |
| § Defendants. § | |

## <u>PLAINTIFFS' OBJECTIONS TO THE MEMORANDUM AND RECOMMENDATION BY THE MAGISTRATE JUDGE ON DEFENDANTS' MOTIONS TO DISMISS</u>

Plaintiffs, Farmers Texas County Mutual Insurance Company, 21st Century Centennial Insurance Co., 21st Century North American Insurance Co., Bristol West Specialty Insurance, Farmers Insurance Company, Inc., Fire Insurance Exchange, Texas Farmers Insurance Company, Foremost County Mutual Insurance Company, Foremost Insurance Company Grand Rapids, Michigan, Home State County Mutual Insurance Company, Truck Insurance Exchange, and Mid-Century Insurance Company ("Farmers") respectfully make the objections to the Memorandum and Recommendations entered in this matter on March 12, 2024.  (Dkt. 83).

The Memorandum's reliance upon *Allstate Ins. Co. v. Donovan,* No. 12-0432, 2012 U.S. Dist. LEXIS 92401, 2012 WL 2577546 (S.D. Tex. July 3, 2012) and *State Farm Mut. Auto Ins. Co. v. Giventer,* 212 F. Supp. 2d 639, 650 (N.D. Tex. 2002) is misplaced.

*Giventer* was decided 7 years before the United States Supreme Court's *Boyle* decision and 13 years before the Fifth Circuit's *Plambeck* decision.  Likewise, the *Donovan* case was decided 3 years before the Fifth Circuit decision in *Plambeck*.  The *Donovan* case relies upon Fifth Circuit caselaw before *Plambeck* was decided in 2015.  *Donovan* at 20, *citing, Elliott v. Foufas,* 867 F.2d 877, 882 (5th Cir. 1989).  The combination of the cases being decided years before, and using caselaw that existed before, the *Boyle* and *Plambeck* decisions, and the distinguishing facts of *Giventer* and *Donovan*, make their applicability to this case for analysis purposes an error in the Memorandum.

2

For the reasons stated in these objections, the Memorandum and Recommendations should not be followed, and this case should not be dismissed.

# TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ........................5

STATEMENT OF ISSUES ..........................................................................................5

LEGAL STANDARDS ..............................................................................................6

SUMMARY OF ARGUMENTS....................................................................................6

OBJECTIONS SUPPORTED BY CASELAW AND AMENDED COMPLAINT ................10

1. FARMERS HAS STATED A CLAIM FOR ENTERPRISE STATUS ...........................10

A. THE MEMORANDUM ERRS BY REQUIRING SEPARATE PURPOSE ...................11

B. THE AMENDED COMPLAINT ALLEGES A SEPARATE PURPOSE ......................13

C. THE AMENDED COMPLAINT ALLEGES A CONTINUING UNIT .......................19

2. MONEY HAD AND RECEIVED SHOULD NOT BE DISMISSED ...........................22

CONCLUSION........................................................................................................23

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Farmers sued Defendants under the Racketeering Influenced and Corrupt Organizations Act ("RICO") for damages caused by a long-standing, ongoing scheme in which all Defendants participated. (*See* Amended Complaint at Dkt. 53).  Farmers alleges Defendants, who are medical providers, knowingly submitted, or caused to be submitted, to Farmers documents that depict fraudulent evaluation reports and billing, including substantial templating, upcoding, overbilling, billing for services not rendered and unwarranted diagnostic procedures, among other irregularities.  (Dkt. 53). The Magistrate Judge has issued a Memorandum and Recommendation on Defendants Motions to Dismiss (Dkt. 83), and Farmers objects to findings in the Memorandum and Recommendation.

## STATEMENT OF ISSUES

Farmers asserts that the Memorandum and Recommendation contains the following errors:

(1) The Memorandum errs by finding the Amended Complaint does not sufficiently allege enterprise status.

   a. The Memorandum's reliance on the Southern District *Donovan* and *Ginter* cases is misplaced, as Fifth Circuit authority, applying the United States Supreme Court law, controls.  Specifically, Fifth Circuit caselaw holds that a separate purpose is not required.  *See Allstate v. Plambeck*, 802 F.2d 665, 673 (5th Cir. 2015).

   b. Even if the Court finds that *Donovan* case controls, the Amended Complaint sufficiently pleads enterprise status.

    i.   The Memorandum errs in finding that the Amended Complaint does not sufficiently plead purpose.

    ii.   The Memorandum errs in finding that the Amended Complaint does not sufficiently plead continuing unit.

(2) The Memorandum errs in dismissing the money had and received cause of action.

## LEGAL STANDARDS

This Court's review is *de novo*.  *See* 28 U.S.C § 636(b)(1).  "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendation to which objection is made.*"  Id.*  In considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the Complaint and view the allegations as a whole, in the light most favorable to the non-movant.  *Scanlan v. Texas A&M Univ.,* 343 F.3d 533, 536 (5th Cir. 2003).  The Fifth Circuit has "consistently disfavored dismissal under Rule 12(b)(6).  *Id.*  A complaint should only be dismissed if it fails to include allegations "that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Allstate Ins. Co. v. Benhamou,* 190 F.Supp.3d 631, 642 (S.D. Tex. 2016).

## SUMMARY OF ARGUMENTS

The Memorandum errs when it concludes that Farmers failed to sufficiently allege an association in fact enterprise status.  When considering whether an association in fact enterprise status was sufficiently pled, the Courts look to whether the alleged association in fact has purpose, relationships among those associated with the enterprise, and longevity.

*Boyle v. United States,* 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009). The Memorandum correctly states that an ongoing enterprise was clearly pled.  (Dkt. 83 at 8). The Memorandum errs in finding that 1) purpose and 3) continuous unit with a consensus decision making structure were not sufficiently alleged in Farmers' Amended Complaint.

First, the Memorandum incorrectly finds that Farmers failed to satisfy the existence of a purpose of the association in fact enterprise. The Fifth Circuit has discussed that the existence of a separate entity is the analysis and not a separate purpose from the racketeering activity. *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015).  The underlying Court in *Plambeck* found that the enterprise treated individuals who required treatment, and that the enterprise "had a shared common purpose i.e. the solicitation, treatment and legal representation of payments through which the enterprise profited by a presentation of claims."  *See Allstate Ins. Co. v. Michael Kent Plambeck, D.C.,* No. 3:08-CV-388-M, 2014 WL 1303000 at 3 (N.D. Tex. Mar. 21, 2014), *aff'd sub nom. Allstate Inc. Co. v. Plambeck,* 802 F.3d 665 (5th Cir. 2015)(finding no binding authority that shared purpose has to be different from the racketeering activity).  Plaintiff Farmers contends that the analysis in the Memorandum should have addressed the existence of a separate entity and not a separate purpose.

Farmers objects to the Memorandum for improper application of law, but, even if this District Court finds that a separate purpose should be alleged, Farmers contends that separate purpose was sufficiently alleged in the Amended Complaint.  Farmers alleged that not all patients of the Defendants were part of the scheme by setting out that some patients received unnecessary MRIs, and some did not.  (Dkt. 53 at 31).  The existence of the

enterprise, separate and apart from scheming to overbill Farmers, was set out in Farmers'
Amended Complaint by the allegations that the Defendants work together to treat patients.
(Dkt. 53 at 2).  Treating patients is a separate purpose of the association in fact enterprise.
The Amended Complaint alleges that actual patients were treated.  (Dkt. 53 at 2-5, 14-16,
32).  The RICO action is based upon improper treatment, reports, billing and other patterns
of conduct throughout the Amended Complaint wherein Farmers is alleging that a
legitimate enterprise to treat patients is being used for illegitimate purposes of scamming
insurance companies. The Memorandum incorrectly relies upon *Allstate Ins. Co. v.
Donovan*, 2012 U.S. Dist. LEXIS 92401, 2012 WL 2577546 (S.D. Tex. July 3, 2012), to
state that the Plaintiff must allege that there were patients whose claims were not
fraudulently inflated.  (Dkt. 83 at 7).  Even though incorrectly relying on *Donovan,* the
Memorandum is factually in error because it ignores the allegation in Farmers' Amended
Complaint that some patients are not part of the scheme.   See Farmers' Amended
Complaint wherein it discusses how patients who received x-rays in an emergency room
were not then placed into a part of the scheme to fraudulently bill Farmers for excessive
MRI's.  (Dkt. 53 at 31).   Farmers specifically alleged that some patients received
unnecessary MRIs, and some did not. (Dkt. 53 at 31).

Second, the Memorandum and Recommendation errs when it concludes that
Farmers failed to plead a consensual, decision-making structure.  Farmers set out not only
a hierarchical structure but also a detailed, consensual decision-making structure for both
the purpose of treating patients and the purposes of billing Farmers, showing that it is a
continuous unit.  The Amended Complaint sets out a continuous line of treatment for

patients and a use of one facility's reports and software by all Defendants, and this shows a consensus has to be reached in order for each Defendant to participate in the treatment of patients through this organized structure. (Dkt. 53 at 3).  Separately, the consensus also has been alleged and shown to be a part of the pattern of racketeering, the Amended Complaint alleges a structure is utilized to facilitate the racketeering acts with the added in element of certain patients' charts, reports and bills being utilized by all Defendants in a pattern of racketeering, which could only be accomplished through a consensus and agreement.  The descriptive acts, notes and letters that contain discrepancies and falsehoods in the Defendants charts, letters, notes and billing, which has been described in the Complaint in detail, can only be accomplished by agreement and consensus to maintain the pattern of racketeering.   Farmers has not alleged that each party is conducting its own affairs.  It has been alleged that each party has a part and is knowingly participating in the pattern of racketeering, and it has spelled out through patient notes, records and letters how this allegation is supported.  "….nothing in RICO exempts an enterprise who associates engage in spurts of activity punctuated by periods of quiescence." *Boyle,* 556 U.S. at 946.

Finally, the Memorandum and Recommendation errs when it concludes that the claim for money had and received should be dismissed.  The Memorandum is in error in stating that the RICO claims should be dismissed and, as such, the money had and received claim should remain.  The Memorandum decided dismissal of money had and received under a supplemental jurisdiction standard and did not review the claim on whether sufficiently plead facts.  Since RICO claims should not be dismissed, then the money had and received claim should remain.

This Court considered an almost identical Complaint brought by Plaintiffs and denied an almost identical motion to dismiss in Cause No. 4:20-cv-04152, *Farmers Texas County Mutual Ins. Co., et al v. Health & Medical Practice Assoc., et al.* Further, another lawsuit with almost identical facts and an almost identical Motion to Dismiss brought by these same lawyers was denied by the Southern District. *State Farm Mut. Auto. Ins. Co. v. Punjwani,* 2019 U.S. Dist. LEXIS 223054; 2019 WL 7377215 (S.D. Tex. Dec. 31, 2019). Likewise in this case, the Defendants Motion to Dismiss should be denied, and this case allowed to proceed forward.

## OBJECTIONS SUPPORTED BY CASELAW AND AMENDED COMPLAINT

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the Amended Complaint and view the allegations as a whole, in the light most favorable to the non-movant. *Scanlan v. Texas A&M Univ.,* 343 F.3d 533, 536 (5th Cir. 2003). The Fifth Circuit has "consistently disfavored dismissal under Rule 12(b)(6). *Id.* A complaint should only be dismissed if it fails to include allegations "that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Allstate Ins. Co. v. Benhamou,* 190 F.Supp.3d 631, 642 (S.D. Tex. 2016).

## 1. FARMERS HAS STATED A CLAIM FOR ENTERPRISE STATUS

Farmers brought a claim under RICO against the Defendants. RICO defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961 (4). The United States Supreme Court has held that an association of fact

10

enterprise possess three structural characteristics:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.  *Boyle*, 556 U.S. at 946.  Under an association in fact enterprise, the Fifth Circuit has determined that the enterprise 1) must have an existence separate and apart from the pattern of racketeering 2) must be an ongoing organization and 3) its member must function as a continuing unit as shown by hierarchical or consensual decision-making structure.  *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015), *citing Calcasieu Marine Nat'l Bank v. Grant,* 943 F. 2d 1453, 1461 (5th Cir. 1991).  The Court goes on to describe how the linchpin of enterprise status is continuity or ongoing nature.  *Id. at 673-674.*  The Court, after discussing this language, states that there is no binding authority that the shared purpose must be different than committing racketeering activity.  *Id.*  The Memorandum and Recommendation correctly found that Farmers Complaint set out an ongoing organization. (Dkt. 83 at 8).  The Memorandum and Recommendation incorrectly held that prongs 1 and 3 were not met.

### A.  THE MEMORANDUM ERRS BY REQUIRING SEPARATE PURPOSE

The Fifth Circuit has held that the shared purpose to establish an association in fact enterprise is not required to be completely separate.  *See Allstate v. Plambeck*, 802 F.3d 665 (5th Cir. 2015).  In *Plambeck,* similar allegations are alleged of a scheme to defraud an insurance company through treatment of individuals involved in motor vehicle accidents. Allstate sued telemarketing, chiropractic and law offices contending a violation of RICO. *Id.*  The defendants contended that no association in fact enterprise existed if the shared purpose was to conduct racketeering.  *Id.* at 674.  The Court held that no binding authority

held that an enterprise must have a purpose besides committing racketeering activity. *Id.,* citing *United States v. Turkette,* 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed 2d 246 (1981). The Fifth Circuit determined that there is no impermissible collapsing of the distinction between the enterprise and the pattern of racketeering. *Id.* Applying this Fifth Circuit case law, the Amended Complaint sufficiently pleads purpose required by *Boyle.*

The Memorandum's reliance upon *Allstate Ins. Co. v. Donovan,* No. 12-0432, 2012 U.S. Dist. LEXIS 92401, 2012 WL 2577546 (S.D. Tex. July 3, 2012) and *State Farm Mut. Auto Ins. Co. v. Giventer,* 212 F. Supp. 2d 639, 650 (N.D. Tex. 2002) is misplaced.

*Giventer* was decided 7 years before *Boyle* and 13 years before the *Plambeck* Fifth Circuit decision. *State Farm Mut. Auto Ins. Co. v. Giventer,* 212 F. Supp. 2d 639, 650 (N.D. Tex. 2002). In *Giventer,* the scheme alleged was that motor vehicles accidents were staged and deliberately caused. *Id* at 641. The *Giventer* case asserted claims that phony victims were part of the scheme. *Id.* The *Giventer* case alleged that after the staged accidents, "planted" individuals would take the parties to a law firm and clinic. *Id.* at 642. The allegations in Farmers' complaint do not involve fake or deliberately caused accidents or phony victims. The combination of the case being decided years before, and using caselaw that existed before, the *Boyle* and *Plambeck,* and the different facts of *Giventer*, make its applicability to this case for analysis purposes an error in the Memorandum.

Likewise, the *Donovan* case was decided 3 years before the Fifth Circuit decision in *Plambeck*. *Allstate Ins. Co. v. Donovan,* No. 12-0432, 2012 U.S. Dist. LEXIS 92401, 2012 WL 2577546 (S.D. Tex. July 3, 2012). The *Donovan* case relies upon Fifth Circuit caselaw before *Plambeck* was decided in 2015. *Id.* at 20*, citing, Elliott v. Foufas,* 867 F.2d

877, 882 (5th Cir. 1989). The *Donovan* case also relies upon *Giventer*, which has already been distinguished from the case before this Court above and which is 13 years before other Fifth Circuit precedent. *Id.* at 25, *citing State Farm Mut. Auto Ins. Co. v. Giventer,* 212 F. Supp. 2d 639, 650 (N.D. Tex. 2002). The *Donovan* case's applicability to the present case is also distinguishable in that a separate purpose, although not required, is stated in the Amended Complaint in numerous locations. The Amended Complaint alleges that some patients were not part of the scheme. (Dkt. 53 at 31). The *Donovan* case is also utilized in error as to continuing unit because the decision found no continuing unit combined with no pattern of racketeering alleged. *Id.* at 31-32. As such, the Memorandum citing *Donovan* as grounds for not finding sufficient allegations is incorrect because *Donovan* is distinguishable.

## B.  THE AMENDED COMPLAINT ALLEGES A SEPARATE PURPOSE

In the event the Court reviews the Amended Complaint to determine if a separate purpose is pled, Farmers sufficiently pled a separate purpose as well. The Amended Complaint alleges that 1st Choice is a legal entity. (Dkt. 53 at 95). The Amended Complaint alleges that the other Defendants are in a continuing participation with 1st Choice is in a pattern of racketeering beginning in 2016. (Dkt. 53 at 33). A separate purpose was alleged in the Amended Complaint by the following allegations:

a.  Farmers alleges patients who received x-rays at an emergency room were not placed into a part of the scheme to fraudulently bill Farmers for excessive MRI's. (Dkt. 53 at 31). Therefore, Farmers sufficiently pleads that patients were treated that were not part of the pattern of racketeering.

b.  The Amended Complaint as a whole discusses the treatment of patients which is a separate purpose.  The pattern and scheme alleged is improper reports, billing, unwarranted procedures, upcoding, overbilling, templating and other irregularities.  (Dkt. 53 at 2-3).   The Memorandum incorrectly finds that a statement in the Amended Complaint of "the pattern of treatment does not reflect proper treatment of patients" means that Farmers contends and has not alleged that patients were treated.   Treating patients is a legitimate purpose of the enterprise.  The illegitimate enterprise is the fraudulent generation of documents that were sent to Farmers to receive payments.  Overbilling for a patient does not mean that patients were not legitimately treated in some cases.  Overbilling on its face means that a legitimate bill was warranted, but it was increased fraudulently to make it an overbilling.

c.  The Amended Complaint discusses how Defendant chiropractors treated patients.  (Dkt. 53 at 3).  The Amended Complaint states that the treatment of the patients was not personalized.  (Dkt. 53 at 3).  The United States Supreme Court has held that the same facts that show a pattern can show an enterprise. *Boyle.*  The Amended Complaint clearly states that patients were being treated and those patients were being pushed through a pre-engineered line of treatment. (Dkt. 53 at 3).  The Memorandum incorrectly states that alleging a scheme of improper billing to Farmers does not allege a separate purpose of treating patients.

d.  The treatment is alleged in the Amended Complaint to be conducted by Chiropractors, Pro Health, Pharmacies, Radiology, and Pain Management. (Dkt. 53 at 3).

e.  The Amended Complaint alleges that the Defendants are chiropractic providers (Dkt 53 at 4), pain management companies (Dkt 53 at 4), Pro Health (Dkt 53 at 4).

f.  The Amended Complaint alleges that some but not all patients receive chiropractic treatment without chiropractic manipulation -- not no treatment, but a certain type of treatment.  (Dkt. 3 at 4).

g.  The Amended Complaint alleges patients are being examined by licensed chiropractors (Dkt. 3 at 14).

h.  Not only does the Amended Complaint allege examination but it also alleges re-examinations.  (Dkt 3 at 15-16).

i.  The Amended Complaint alleges that some of the patients are actual people because they were people that Farmers had insured.  (Dkt. At 2).

**j.**  The Amended Complaint alleges that billing and supporting documents based upon patient examinations evidence a pattern of fraud.  (Dkt. 3 at 5).  Examining patients is a legitimate purpose.

To the extent the Court finds that an allegation of separate purpose is required, these allegations satisfy the case of *Allstate Ins. Co. v. Benhamou,* 190 F. Supp. 3d 631, at 651 (S.D. Tex. 2016).  In the *Benhamou* case, the Court found that an allegation that patients were treated that were not involved in the fraud satisfies the separate purpose requirement.

15

Defendant did so by stating that patients were treated that were not involved at Dkt. 53 at 31, as explained in a. above.   Therefore, the Amended Complaint clearly alleges that the Defendants are an enterprise involved in examining actual patients which shows a separate enterprise purpose.  The Defendant entities, doctors, and individuals that are part of an enterprise involved in examining actual patients have a legitimate purpose of conducting an examination. The Plaintiff Farmers is not the patient and so the pattern and scheme to defraud Farmers by overbilling and other patterns and practices is separate and apart from the examination and treatment of patients.  The separate purpose requirement is satisfied by these allegations.  Said another way, Farmers is not the patient or receiving the treatment that is being billed, which is a separate purpose than providing false reports in an insurance claim or lawsuit to an insurer.

The Memorandum incorrectly asserts that the "Amended Complaint contains no allegations that Defendants provided services to legitimate patients."  This ignores Farmers' allegation that some of the patients did not receive overinflated services and billing for MRIs i.e. those that received emergency room x-rays.  (Dkt. 53 at 31).  Farmers has made allegations of treatment of patients that did not include the scheme to defraud for MRIs.

Farmers is not contending that fake patients were recruited in its Amended Complaint by a solicitation to the public for free evaluations if in an accident.  Farmers has alleged the contrary.  Farmers has alleged that its insureds were examined by the Defendants, which is a legitimate separate enterprise of treating patients, but false reports and billing were sent to Farmers which is an illegitimate purpose.  Farmers also alleges that

some of the patients did not receive overinflated services and billing for MRIs i.e. those that received emergency room x-rays.  (Dkt. 53 at 31).  Farmers has made allegations of treatment of patients that did not include the scheme to defraud for MRIs.

The evidence establishing an enterprise and the pattern of racketeering may "coalesce."  *Boyle,* 556 U.S. at 947.  The patients were being treated through a line of treatment.  Treating patients through a line of treatment at Defendants facilities shows that Defendants have a legitimate purpose of treating the patients through that continuing unit, but it also shows the pattern of racketeering to submit bills to Farmers.  Legitimate purpose for an enterprise with an illegitimate activity violating RICO has been alleged.

The Memorandum discusses how the district courts look to see if the enterprise provided services to legitimate patients before the alleged fraud began. (Dkt 83 at 6).  The Complaint lists out the dates that the entities became associated in a medical providing enterprise together, beginning with 1st Choice in 2012, before the alleged scheme or pattern started as alleged in the Amended Complaint.  (Dkt 53 at 7, 9-14).  This demonstrates another manner in which the reliance upon *State Farm v. Ginter* in the Memorandum is misplaced, because in *Ginter* the alleged association in fact enterprise included a law firm that received the wrongful information and used it in lawsuits, and the law firm could not be alleged as having treated patients.   These facts are completely distinguishable from a set of medical providers working together as an association in fact enterprise to treat patients as alleged in the Amended Complaint.  The Amended Complaint alleges that the medical providers had an enterprise before the alleged scheme or fraud began.  The Memorandum relies upon *Allstate v. Donovan* stating that the allegations in that case did

not show that the enterprise treated other legitimate patients that were not inflated.  The Court in *Donovan* noted that the complaint in that case left many questions leaving the Court to wonder what documents and statements were fraudulent, who received payment for any items, what each Defendant gained, what facts showed items to be fraudulent. *Donovan* at 17-18.  The complaint in *Donovan* was filled with conclusory statements while the Amended Complaint in this case is detailed.  Further, the Amended Complaint in this case states that the enterprise started operating before the alleged scheme, and this means that the enterprise saw patients that were not part of the scheme.  *Donovan* is further distinguishable in that the Amended Complaint gives examples of patient care that did not result in an overbilling.  For example, the Amended Complaint states that the Defendants treated patients differently that were seen in an emergency room with x-rays taken.  (Dkt. at 31).  These patients were not part of the scheme to obtain additional MRI's and bill the MRIs to Farmers.  (Dkt. at 31).

Further, in addition to asserting that the Amended Complaint refers to other patient care, Plaintiff Farmers contends that the caselaw supports that <u>seeing patients, even if it includes patients with fraudulently inflated billing, is an association in fact enterprise separate and apart from the alleged racketeering.</u>  The Amended Complaint specifically discusses that patients saw the Defendants for treatment through a mutually agreed upon line of treatment of the Defendants and those patients deserved proper care.  (Dkt. at 3). This allegation is sufficient under the caselaw to establish an association in fact enterprise separate and apart from the alleged racketeering.  The Amended Complaint does not

contend that the patients are solicited or lured to the operation of the Defendants to suggest that this is their only purpose.

Whether the Amended Complaint of Farmers is viewed under a separate purpose analysis, or the law set out by the Fifth Circuit in *Plambeck*, the Amended Complaint sufficiently pleads a cause of action against Defendants.

### C.  THE AMENDED COMPLAINT ALLEGES A CONTINUING UNIT

An enterprise can be proven with "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Boyle v. United States,* 556 U.S. 938, 944-945, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009).  The United States Supreme Court has held that an enterprise does not need to have a hierarchical structure, consensus, show of strength, or fixed roles.  *Boyle* at 948.  The Memorandum incorrectly states that the Amended Complaint does not describe a continuing unit. (Dkt. 83 at 9-10).   The Amended Complaint goes further than merely stating that the businesses sometimes work with each other, but rather it shows a plan to work together that also utilizes the same reports, software, billing, descriptive words, and examination findings that show a continuing unit not only in treating patients, but in perpetuating the racketeering activities of defrauding an insurance company.   The Amended Complaint states that patients were being treated and those patients were being pushed through a pre-engineered line of treatment of Defendants.  (Dkt. 53 at 3). An allegation of a pre-engineered line of treatment of patients establishes a consensus of the Defendants to operate together in this line of treatment (further illustration of a consensus

is discussed below the chart).   The Amended Complaint describes and has an illustration of the course of treatment prescribed to patients:



(Dkt. 53 at 3).   This alleges on its face that patients were being treated or received services by chiropractors, pain management professionals, pharmacies, radiologists and pro health as an association in fact enterprise.  Further, Farmers pled a large majority of these medical service providers came into existence before the alleged scheme began.  (Dkt. at 9-14). Once again, the evidence establishing an enterprise and the pattern of racketeering may "coalesce."  *Boyle*, 556 U.S. at 947.  The Supreme Court determined that the existence of an enterprise may be ***inferred*** from the same evidence establishing the pattern of racketeering activity.  *Id*.

Courts have found that an association in fact enterprise is oftentimes more readily proven by what it does as opposed to an abstract analysis of structure.  *Allstate Ins. Co. v. Benhamou,* 190 F. Supp. 3d at 651, citing *Boyle,* 556 U.S. at 951.  The Amended Complaint describes in great detail the fact that the associations function as a continuing unit.  (Dkt. 53).   The Memorandum incorrectly states that items are conclusory when, in reality,

20

Plaintiffs give very specific factual allegations and examples of the parties working together. The Amended Complaint alleges control, the participation of each Defendant, the relationship and the actions by each Defendant that establishes a continuing unit. For example, the Complaint discusses items carried over from Defendant facility to facility and doctor to doctor. (Dkt. 53 at 14). The Amended Complaint discusses a pre-engineered course of treatment. (Dkt. 53 at 3). The Amended Complaint alleges the scheme is controlled by those most closely connected to the Huynh brothers. (Dkt. 53 at 4). The Amended Complaint identifies consistent errors in the patient reports at each facility, which illustrates that the Defendants are not acting independently but as a continuing unit. (Dkt. 53 at 14). The Amended Complaint identifies that the Defendants are utilizing the same templates and cloud-based items. (Dkt. 53 at 15, 18, 19). The Amended Complaint alleges that 1st Choice is providing cloud-based template reports to the Defendants to utilize in the treatment of patients. (Dkt. 53 at 14, 18, 19, 33). The Amended Complaint alleges that the various Defendants are utilizing the letterhead of one Defendant, 1st Choice, although they are operating from numerous locations, showing that the Defendants are not acting independently. (Dkt. 53 at 16). Further, the same forms were shown to be used by other Defendants on its letterhead. (Dkt. 53 at 16). The forms and pattern of treatment also were being utilized by other Defendants as alleged in the Amended Complaint. (Dkt. 53 at 17-31). These are facts that show a continuing unit and not merely conclusory statements. They show a consensus to engage in the acts by agreement. These alleged facts demonstrate a structural hierarchy by the establishment of conduct by 1st Choice, although a formal structure is not required to be alleged or proven for an enterprise, and a consensual

decision-making structure by all the Defendants agreeing to participate in the line of treatment for patients AND the unlawful scheme. The Memorandum errs because the Amended Complaint alleges more than is required by law for a continuing unit allegation.

## 2.  MONEY HAD AND RECEIVED SHOULD NOT BE DISMISSED

The Memorandum recommends a dismissal of Farmers' money had and received claim because the RICO claims were recommended to be dismissed.  Once the Court finds that the RICO claims are not to be dismissed, then the claims of money had and received should not be dismissed.  To assert a money had and received claim, it is sufficient to allege that the Defendant holds money, which in equity and good conscience belongs to the plaintiff. *H.E.B., LLC v. Ardinger,* 369 s.W.3d 496, 507 (Tex. App. – Ft. Worth 2012, no pet).  "The claim only looks to the justice of the case and inquires whether the defendant has received money that rightfully belongs to another," and the Plaintiff does not have to prove wrongdoing by the Defendant.  *Id., see also Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Texas,* No. 11-2086, 2012 WL 4028107 at *4 (S.D. Tex. July 24, 2012). These allegations have been sufficiently pled.

## CONCLUSION

For the foregoing reasons, Plaintiff Farmers respectfully objects to the Magistrate Judge's Memorandum and Recommendation, and Farmers requests that the Defendants Motions to Dismiss be denied.

Respectfully submitted,

**DOYEN SEBESTA & POELMA, LLLP**

OF COUNSEL:

**S. Donean Surratt**
Texas Bar No. 01720400
E-mail: sds@fisherfirm.com
**FISHER FIRM**
560 S. 4th Street
Silsbee, Texas 77656
Telephone: (409) 444-3333
Facsimile: (409) 331-5060

/s/      Scot G. Doyen
**Scot G. Doyen**
Texas Bar No. 00792982
sdoyen@ds-lawyers.com
4CityNorth
16945 Northchase Drive, Suite 1400
Houston, Texas 77060
Telephone: (713) 580-8900
Facsimile: (713) 580-8910

Attorney in Charge for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 26th, 2024 the foregoing document was served on all counsel of record via the Court's CM/ECF system:

*/s/ Scot G. Doyen*
Scot G. Doyen

23